We'll call the first matter for oral argument this morning, and that is the matter of InRe Johnson&Johnson, a.k.a. Estrada v. Johnson&Johnson. Good morning, and may it please the Court. My name is Timothy Blood, and I'm here for the appellant, Mona Estrada, and I would like to reserve three minutes for rebuttal time. Granted. The plaintiff here purchased baby powder to use as directed, believing defendant's marketing and advertising that the baby powder was safe and gentle. She wanted a safe product, and that is what she thought she was buying. In fact, she used it for over 60 years. However, the marketing claims were false and misleading, and she now has an increased risk of contracting ovarian cancer. All right. Let me stop you right there since you have invoked the word risk, because I wanted to begin by understanding or hoping that I understand what this case is not about. And am I understanding your theory correctly, that the case has nothing to do with whether your client has ovarian cancer or even has a risk of ovarian cancer? That is right. The harm that gives rise to Article III standing is the purchase of a falsely advertised product. And so there has to be some false advertisement alleged. Here is the product is safe when, in fact, it provides an increased risk of ovarian cancer. So in that sense, there has to be something false out there. And let me jump right into it. So the physical injury or risk of physical injury is not part of the case? It's purely an economic damages case. Purely an economic damages case. There has to be an advertisement that the product is safe? You may have misheard you. So there either has to be an advertisement that the product is safe or because it's a safety-related problem with the product, it can also be an omission. And there was an advertisement? There was a long-term. Actual advertisement or an implied, let's say, statement that it is safe to use? In the world of false advertising, those are the exact same thing. So advertisements are sometimes expressed and often implied. There's lots of implied advertisements that convey a marketing message, and those are actionable under state false advertising laws. And that was the case in this case? And that was the case in this case. And to go even further than that, this was a long-term advertising campaign. What was it like? You use this product, it's okay for you to use it? If I use this product, it's okay to use it? And even beyond that, with this particular product, Johnson's Baby Powder, was the cornerstone of not just branding this product as safe, but branding the Johnson & Johnson Company as a safe, friendly producer of goods that are good for the world and without any problems. So your harm is she accepted that advertisement and spent money to buy the product? Yes, that is it. And yet she used the product, right? Yes. And was not harmed physically? Well, she has an increased risk of... But that's not part of your theory. Well, let me explain why. It's the backdrop of the theory. It's what makes the false advertising... I don't want to know about backdrops. I want to know about the components of the legal theory that would provide you standing. Right. So what provides legal standing is the purchase of a falsely advertised product. When that false advertisement was material to your purchase. How dependent is your theory on the existence of the science out there, if at all? Well, the science is used to show that the marketing message was false. So, for example, if we allege that the product is not, in fact, safe, based on the increased risk of ovarian cancer, if the science were to turn out that it is perfectly safe, then the claim would fall or fail on the merits. I'd like to hear you address the Supreme Court's decision in Spokio. Because while the facts are not the facts of this case, it makes clear that a plaintiff can't meet the Article III standing obligations that exist by a mere allegation of some procedural violation. And granted that was an FCRA case and involved the procedural requirements of the FCRA, but I'm wondering if the same principle cannot be applied here, even if Johnson & Johnson failed to provide your client with health warnings. And that's what you're suggesting, isn't it? That what was on the labeling of the product did not warn of what risks now are said to exist, given the science, is that right? The claim goes further than that. There was an affirmative marketing message conveyed over many decades, as in in rate tobacco too, that conveyed that the product was affirmatively safe, safe in fact and gentle enough to use on a baby. And yet in reality, it increased one's risk of contracting ovarian cancer. But Spokio pointed to the inaccuracies that the plaintiff alleged in the report, but then said that the fact of the inaccuracy did not result in any harm. So the failure to warn here also resulted in no harm. Why shouldn't we apply Spokio? Spokio applies in situations where there is a statute that says, here's a penalty, and it doesn't matter whether or not people care about whatever the purpose of the statute was in preventing and incentivizing. And Spokio said you have to have some sort of connection, in order for courts to have Article III standing, you have to have some sort of connection between the statutory penalty, even loss of money, as a result of the statutory penalty. The statutory penalty has to be connected to your loss in order to have Article III standing. And in Spokio, there was a statute that said, if you engage in this conduct, you will get penalized, but that penalty had no connection to any harm. Here it's very different. If there's a falsely advertised product, and the purchaser purchases based on that false advertisement, then they have standing because the Article III connection is the loss of money. Even if the product has performed exactly as the consumer has wanted and expected it to perform. Exactly. And the case on point, and this is a matter of California law, whether California law gives you that right, is Quickset v. Superior Court. There the facts are on all fours. There what happened was, it was a made in the USA case. They sold lock sets, door locks. The lock sets were perfectly functional. They weren't more expensive than the competitor lock sets. They were just lock sets. The difference was, on the packaging, the manufacturer wrote that the lock sets were made in the USA. You know, there has been news items concerning the use of Johnson & Johnson baby towel. There have been lawsuits, and Johnson & Johnson has lost. In other words, it has been out there already that there may be a problem with this product. Right. Does that affect your case? At least the standing aspect of your case? No, because my case represents past purchases that occurred before the news came out. At some point, if it became known that the product increased the risk of ovarian cancer, then that would not be a false advertising case, and the plaintiff would certainly fail on the merits. It would be akin to an airplane. An airplane doesn't have to put on its door before you get in, and say, hey, this plane may have, you know, there's a risk that the plane may crash. That's not necessary, because everybody knows that the plane would crash. So that's okay. They may not know why the plane would crash, however. Yeah, you may not know why the plane would crash, but you know there is a risk. How much is required? How much of a warning is required? Well, you wouldn't have a false, under false advertising laws, if a reasonable person would be aware of the fact, then no warning is required, because it's a reasonable person test. It's an objective test. Let me ask you about your pleading. I got around to reading your complaint over the weekend, and you have pled a portion of your economic claim here in the alternative. Estrada alleges that had she been properly warned about this risk, she would either have not purchased the product, or she would have purchased an alternative cornstarch product, right? Which is it? Well, it doesn't matter for purposes of Article 3. It doesn't? Why would the alternative cornstarch product cost more? Because the defendant doesn't get the benefit of it. I believe it's the Third Circuit's case in Danvers that said it doesn't matter what one would do with the money he or she would have saved from purchasing a false advertising product, a falsely advertised product. What matters is whether the purchase was made as a result of false advertisements. I don't understand how that figures into the economic calculus that you would eventually have to demonstrate if the matter went to trial. Well, it wouldn't at all. Because the matter at the moment of harm is the purchase of a falsely advertised good. What you would have done with the money you saved... Because they put an economic value on it. On what? I'm sorry, I didn't... On your law. You have chosen to go this path of an economic claim. Of the Johnson & Johnson cases I've seen, this is the only one I've seen pursuing an economic claim under this theory. Perhaps there are others. But as a consequence, you're going to have to show some value for purposes of showing a loss. You're going to have to show that you're out something. Now, I presume that your theory would be the cost of the product that was purchased over that long period of time or some of that long period of time. But instead, you plead in the alternative saying, I wouldn't have bought it. That's easy to conceptualize the economic loss for. Or, I would have purchased an alternative cornstarch product and you don't allege in your complaint that the alternative cornstarch product would cost less or more. But the alternative cornstarch product, the existence of an alternative cornstarch product goes to the merits of the unfair prong of the unfair competition law claim. That goes to the balancing of harms of one of the ways in which one can recover under the unfair competition law claim. We allege false advertising, fraudulent conduct, unfair business practices, and that goes to unfair business practices, and then also unlawful business practices. So that allegation doesn't go to any remedy whatsoever. The district court assumed that it did, but that's not our position. Our position is that that is not part of any damage or monetary relief or restitution calculation that the court would ultimately make. It's simply not our theory. Let me see if I understand you. Let me try a hypothetical, see if I understand your argument a little bit better. Supposing I buy a car with, I come to learn later, with an airbag that explodes. And the manufacturer knows about it, but doesn't say very much, doesn't give you public notice. But then I learn about it. Now all of a sudden I'm thinking, wait a minute, this car isn't worth the $40,000 I spent. Now it's worth less. Now it's worth $30,000. Is it the case that I have an economic injury, that is I just lost $20,000 because you didn't tell me that it was a defective car? Is that your theory? Is that your case? In that case you would have lost the cost of the repair to correct the airbag. Or the diminished fair market value of the airbag. Or maybe the diminished fair market value. There, in Judge Ferointi's hypo, he continues to have a product that is worth something. With your plaintiff, with your client, she has used in its entirety all the product over that period of time, right? Yes, she has, and now she stands at an increased risk. But she says she would not have bought the product over the period of time had she known that it had the propensity for causing cancer, or the possibility. Right. She never would have bought that product, which seems awfully reasonable. Is that the last standing, or the mere possibility that an injury may happen? Yes, absolutely. And the case law talks about that, that one is put at a hazard. With your answer of yes, I'd like to hear you respond to the two hypotheticals that were raised by your opponent. And that is the hot coffee example and the train ride, the uneventful train ride. You know what I'm referring to indirectly. I think so. Why are they not quite analogous to your situation? If you're in a situation where something is falsely advertised to you, but the event never occurs and nothing ever happens afterwards, and everything worked just fine and everything was functional, and you weren't left with something remaining, then your claim as a matter of law would end up failing, because you suffered no damage. Where is the limiting principle here to this kind of claim? And this is, I recognize, more of a policy argument or a legal policy argument than a legal question. But those two hypotheticals do suggest that there may be no limiting principle here to the bringing of suit and having standing where a plaintiff alleges that despite not having been harmed in any way, some information that is later developed suggests that the product may have subjected someone to risk. Now, do we craft a rule that says as long as it is respectable academic research that has been out there, then that's sufficient? Or can a mere rumor or urban legend be enough to suggest somehow that this product is not what it purports to be in terms of safety and therefore is not worth what I paid for? I think all of the limiting principles end up on the merits of the claim. Remember, it's just Article III standing. It's a very modest thing. So the question is 12b-6 at least. 12b-6. Now, there are circumstances where, and I think the Finkelman case is a good example of that, the Third Circuit's Finkelman case, where the theory is on its face, the theory of the case is so far-fetched, so out there, where you cannot possibly have any causation between the wrong and the ability to complain about it. Well, the Tenth Circuit has elected to carve out a kind of frivolous exception that it would apply. You suggested perhaps something like that? It could be something like that, but in the case... The Finkelman had to do with a possible injury. An impossible injury. Here, though, you have an injury. Literally every appellate court that has addressed whether or not there is Article III standing, whether someone has Article III standing to bring a false advertising case where they relied on the advertisement or it's a safety-related omission. Is a case close to control our precedential opinion? Yeah. Is your claim of injury? I think the closest is certainly... There was a second court case that used Article III standards, including Danvers, and no host from the Ninth Circuit in control. But your brief is rife with citations to control. Is that this case? I think this is an easier call than control was, because this is a falsely advertised product where no reasonable person would take the risk of developing ovarian cancer had they known... No one was in control in the advertised case? Yes. It wasn't a false advertising case because people knew it was a bottle stopper. People knew that they... It had to do with the product itself. They knew about it. It was wasteful when purchased, though. I mean, isn't that more readily ascertainable in terms of damage? Well, whether or not it's more readily ascertainable in terms of damage has nothing to do with Article III standing. Article III standing requires just a trifle of injury, and this is exactly, exactly the quicksand case. And no host from the Ninth Circuit. An economic injury. An economic injury. A trifle of an economic injury. A trifle of an economic injury. It's a loss of money. I would not have paid money for this product had I known. And the trifle in Cattrell, though, was the wasted portion of the eyebrows. Yes, that was the economic waste. In your brief, you had characterized Cattrell opinion to confirm that a consumer's purchase of a product based on the manufacturer's deceptive and unfair business practices constitutes injury in fact. Haven't you over-read Cattrell? I mean, it's not the purchase of the eye drops that established standing here. It was the fact that a valuable portion, according to the plaintiffs of the eye drops, had been wasted. Well, you purchase it, but then you can't use it. Use something. Use some of it for the purpose intended and the purpose sought. It's a wasted portion. And that would affect what your recovery is at the end of the day. But the question of do you have standing to bring a lawsuit to complain about it in federal court. Isn't Cattrell the easier case rather than yours because you've got this wasted product upon which you can place some kind of economic value? Not the ips and dixit of a consumer who says, well, I would have done differently. But it ends up not being. I mean, remember, you have to prove your case. And it's not ips and dixit. You have to show that not just she would not have purchased it. That's not the standard under the merits. It's that a reasonable person would not have. Except that your claim is economic harm. And so it is necessarily based on the damage that she incurred because she would not have purchased it. Right. But her claim fails if she was found to be acting unreasonably. And that's why it failed on the merits as opposed to the Article 3 issue. We'll have you back on rebuttal. Thank you very much. Thank you very much. Mr. Powers. Yes. Thank you. May it please the Court. Matt Powers with the Johnson & Johnson Defendants. So I'd like to address several of the things that counsel raised. And I'd like to start with his argument about safety statements and the Tobacco II decision from the California Supreme Court, which did involve a long-running history of ads that dealt with the safety issues or lack thereof with the tobacco products. Because none of those, that doctrine that was described in the Tobacco II case, has no application here, and I'll explain why in a second. But first I'm going to take it back to statements about safety. This was adjudicated several times in the trial court. There are no statements about safety that Ms. Estrada actually saw and relied on. The only statements about safety they identified were on the website. She was very clear. She did not actually see or rely on those statements before she purchased the product. And just to turn to the Tobacco II point for a second. In the Tobacco II case, the Supreme Court of California held that in a situation that involved a long-running ad campaign, a plaintiff bringing a claim for fraud under the same consumer protection statutes the plaintiff is seeking to invoke here doesn't have to be able to remember the specific advertisement that they actually saw that conveyed whatever the false statement was that they claimed to base their cause of action on. So if you can recall, for example, that I remember seeing an ad. I saw this statement about tobacco. I was given this impression that under some circumstances, people who can make those allegations can assert a reliance claim under California law, which is actual fraud-type reliance is required to plead that claim under California law. Your adversary relies pretty heavily on the Kwikset case. What do you say about that? So I say two things. Let me finish my point and then I'll address exactly that question. The plaintiff here doesn't actually allege that she saw some ad some time that told her this is a safe product. She relies on vague statements about branding. She doesn't say, I remember seeing an ad. The ad conveyed this message to me. Is it on the packaging itself? No, it's not on the packaging. It is not. It is not. Are you talking about safety right now? I'm not quite sure what you're getting at. I'm sorry. There are no promises about safety on the product. The packaging actually contains some warnings, doesn't it? It does. There are several warnings about be careful of inhalation, only for external use, those kinds of things. What about implied representations, as your adversary pointed out? Well, that's exactly what I'm getting at. The implied representation he's trying to invoke is the Tobacco II decision from the California Supreme Court. That only applies in specific circumstances and certainly requires the plaintiff to allege something about the statement they claim they're relying on, not just being branded as having to do with safety, therefore I have pled reliance. She's got to be able to articulate, if the doctrine even applies, it's had very limited application outside of the tobacco context, but if the doctrine even applies on our facts, she's at least got to be able to say, hey, I remember seeing an ad before I bought the product, and it conveyed a safety. I was told it was safe to use. I can't remember the details because it was quite some time ago, but I rely on that statement, and that's why I bought the product. That is not in the complaint. No statements at all that this product is safe to use. It's in the complaint. Not that she saw, not in the complaint. Correct. She has to plead reliance on the statements that she saw. You didn't say that there was no such statement. You're saying that she didn't mean that she saw the statement. Correct. Correct. For standing purposes, isn't it enough that the representations are indeed made, whether she saw them or not? That's a matter of proof later on, isn't it? No. Look, there are several components to injury in fact and standing under Article 3, but if the claim is that I was injured by a statement I never saw, I don't know how that's traceable to the wrongful conduct. The wrongful conduct didn't cause any injury. There's no link between that and any economic injury or otherwise. So I disagree with the court on that issue. I think that in order for her to claim Article 3 standing injury in fact, based on a misrepresentation, she's got to tie the misrepresentation. She has to be able to plead she actually saw and relied on the misrepresentation. For purposes of the traceability requirement? Traceability, I think that's actually part of injury in fact as well. But let me talk about Kwikset, because in Kwikset there was a specific. . . Let me go back. Sure. This case is about injury in fact, isn't it? Correct. I mean, that's what everybody's focused on. Correct. So when you mentioned tracing, it has to be traced. I wasn't sure whether we were aligning into traceability. Well, isn't it enough to make a representation? I mean, what you're suggesting now, isn't that a matter of discovery and proof later on? I mean, this is just a standing issue. Well, Your Honor, she has to plead. . . Actually relies on her to bring the claim. And again, I don't think she has. . . This is an area where the two issues overlap in terms of economic injury and the underlying aspects of the claim. She may not be able to show it later on, but I'm thinking this is the pleading stage and the bar is kind of low at this point in the litigation. Well, under Rule 9, she has to plead exactly what the statements were that she claims she relied on, either under Tobacco II or otherwise. And there was no safety statement that she was able to identify. But to the Kwikset point, Kwikset did involve a specific promise about an aspect of the product. To be fair, it's sort of an intangible aspect, right? It's, we promised that this was made in the United States. That specific statement is part of the reason people buy that product. It's part of the packet of benefits that the manufacturer is promising the product will provide. And the court there said, look, this is at least allegedly a false statement. It is part of the reason people spend money on the product. It's a specific promise about a feature of the product. And under those circumstances, the plaintiff has in fact pled sufficient economic injury to proceed under California's unfair competition law, which is a standing requirement that requires economic loss, similar to Article III, the aspect of Article III we're talking about today. How about, is this case like Cattrell? No, I think the case is not like Cattrell. As Chief Judge Smith mentioned in his remarks, you know, Cattrell involved a situation where the plaintiff was actually forced to waste product, right? That's a specific and articulable loss. And in fact, the Cattrell decision and the court, sorry, the plaintiff's complaint, Cattrell, was full of allegations about exactly how that economic loss played out. Well, but one very important aspect of the Cattrell opinion was its warning that we as courts not effectively collapse a 12B6 inquiry into a standing discussion or consideration. And that's a valid concern, isn't it, as Judge Fuentes has pointed out in a question that the hurdle for standing purposes is relatively low. So that is absolutely a valid concern, and I think that, yeah, it certainly was a concern of the court in Cattrell, but I think that the plaintiff has, with respect to counsel, has misread Cattrell because the blending of merits and standing that this court was concerned about in Cattrell, nothing like that happened here. So recall the claims in Cattrell. The claims in Cattrell, the plaintiff made a decision for a variety of reasons not to plead for a claim. It was purely an unfair and unconscionable claim. In Cattrell, and I'm looking at a sentence here in the opinion, plaintiffs claimed interests arising from state consumer protection statutes that provide monetary relief, which is the plaintiff's case here, to private individuals who are damaged by business practices that violates those statutes, the violation of a California statute. It seems to be sufficient, at least under Cattrell. And that's what the plaintiffs are pleading in this case. So let me respond because the key piece of that is damaged. The key piece of that analysis is damaged. And so let me explain. It's not enough to say as a result of the violation of California statutes that I was damaged. Only if the plaintiff can say in a way that satisfies Article III, I suffered an economic loss because of the violation. That economic loss component is a key part of the California statute that counsel is trying to invoke. In fact, California statute, the unfair competition law, used to not have a standing requirement. It used to allow anyone to sue over virtually anything. They didn't have to have standing. They didn't have to have an injury. It was a true public attorney general statute. The people of California amended the statute in 2004 precisely to address that issue. And they changed it. My question, I wanted to read that sentence because what the plaintiff is saying here, look, I have a legally protected interest, and that interest was not satisfied in this case. And that gives me standing to pursue. Now, plaintiffs may not get passed first base. We don't know that. But this is just a question of can I file this claim? Have I pled enough? And if the pleading is I have a legally protected interest under California law, why isn't that sufficient? The point I was making, Your Honor, is that under California law, they don't have a legally protected interest absent the economic loss claim. It's built into the statute. It's built into the statute specifically to prevent people who had not suffered an economic loss from pursuing claims. So the statute that they're relying on, both statutes, actually by themselves, putting aside Article III standing separately, also require pleading to prove an economic loss. And so they cannot pursue a claim under those statutes absent a claim of economic loss. Let me shift gears a bit. Do I read your brief correctly to suggest that the distinction between an affirmative misrepresentation and a material omission is somehow relevant for standing purposes? And it seems to me, from a 12B6 standpoint, that might have some importance. But is it important for standing purposes? It can be. I'm not sure that it is in this case. The reason I say that it can be is because, certainly, if there are affirmative promises made about a particular product, then that can be part of the bargain that the plaintiff receives when they purchase it. So the Kwikset case is a good example. There are other cases, like the Hinojosa case that counsel referred to, where there's a specific promise about something that has to do with the product. In that case, it had to do with promises about bargaining. This is on sale. That turned out to be false. So if you're advertising a product that's having some specific benefit, whether tangible or not, that benefit's not provided, then at least for standing purposes, they can pursue that claim. Here, we're dealing with a slightly different situation, which is the allegation is an omission of a risk that never materialized. Because for this plaintiff, the claim is, you should have told me about something that didn't affect me. How helpful is the Fifth Circuit's case in Rivera to you? I think you've certainly cited it. I think you've cited it a number of places in your brief. It is helpful. To be clear, the Rivera case did involve a claim of economic loss. So characterizing it as purely a fiscal injury case, I think, is inaccurate. The Fifth Circuit has revisited that case in the Cole matter. In fact, one might read Cole as suggesting in that revisitation, the Fifth Circuit has perhaps backed away somewhat from Rivera. Do you read it that way? I think it recognizes that when you're dealing with a durable product in particular, and to go back to some of the examples that you discussed earlier, there can certainly be ongoing harm. For example, if you have a car and the airbags are unsafe to use, the cost of repair is certainly an injury. In that case, the claim was that the defendant hadn't repaired the product in a timely manner, nothing had repaired it at all. So certainly in those circumstances, you can have an economic injury, either associated with a loss in value of the product, you have to keep driving it, you don't want to drive it, or it's less useful because you're worried about the risk of the airbag going off, or you have to repair it. And so in those circumstances, you're not dealing with something that's been completely used and consumed without any injury. And with the Court's permission, I'd like to just touch on two points before I finish. One is the Cottrell point, the blending of standing and merits, because I think that is an important question. But this Court in Cottrell was dealing with a situation where the trial court, Judge Wilson, as part of the standing analysis, rejected standing because the plaintiff had failed to plead a fraud-based or fraud-type injury in the case, even though the plaintiff there wasn't actually pleading or attempting to bring a fraud claim. And so that was the blending of merits and standing that the Court there said was improper. The other thing I'd like to touch on in the time I have remaining is we've invoked California law a couple of times, and I want to emphasize at the close that we are dealing with a relatively specific set of circumstances. It's a used and consumed product. The claim is not that there was a promised benefit that was not provided. The claim is that there was a risk that was not disclosed. And to the point about the coffee example, the train example, the plane example that we talked about before, and I flew out here yesterday for this hearing, and had I been told in advance of my flight that, well, you know what, your pilot didn't sleep well last night, or the engine on your plane has gone a couple of extra months past when it should have been inspected, I got here fine. It was even a pretty nice flight. I got what I paid for. And the fact that I was exposed allegedly to one of those types of risks, and there's always some risk that you could articulate in those circumstances, doesn't mean you're injured for purposes of Article III standards. Let me ask you a question about the Seventh Circuit case. Ike versus Allegan, you're familiar with. Yes. I assume. And the Seventh Circuit in that case concluded that the plaintiff failed to allege a legally protected interest and therefore lacked standing. So standing in that case was connected to a legally protected interest. California, in this case, does provide a legally protected interest, and the plaintiffs, as I understand it, have pled that legally protected interest. Now, it would seem to me, based on that case, that as long as they pled a legally protected interest that was not provided or satisfied by the product, they should have standing. So I think there's what would be your response to that? I would say two responses to that. One is, again, Spokio does make clear that sort of the bare, the allegation of a violation of statute without law. The law in California gives me this interest. I have it. They have pled it, and you have violated it. That's basically what I – it's a bare thing pleading, but it seems to be sufficient under at least by implication the Seventh Circuit's reading. I disagree, and I'm going to go back to what I hope is not an annoying refrain, which is that the statute they're relying on only provides a remedy. You can only pursue a claim. It only comes into play and can only be pursued by a plaintiff here if they also can allege an economic harm. And without that economic harm, they can't allege a violation of the statute that they can pursue. Thank you. Thank you very much, Mr. Powers. Mr. Blood? So it is a legally protected interest that we are alleging has been violated. It is a well-established legally protected interest. The Kwikset case discusses Article III standing because, as my opponent correctly points out, Proposition 64 required Article III standing in order to bring that claim. The Kwikset case also addressed the issue of injury in fact in addition to loss of money or property, which my opponent just referred to, and held if you have a situation like a false advertising case where somebody paid money for a falsely advertised product, that not only do you satisfy the injury in fact Article III requirement, but you also satisfy the loss of money or property. So that in this type of case that we have right here, those two components of standing under the UCL are satisfied by the same conduct, the payment of money for a falsely advertised product. And it's exactly what happened in the Ninth Circuit upheld this type of claim in Hinojos. And both of those cases, Kwikset and Hinojos, followed the Third Circuit's ruling in Danvers. Would you plead in this case that this product was falsely advertised? I'm sorry? Would you plead in this case that the product was falsely advertised? Yes, yes. It contains both affirmative representations and then also omissions. But it is a – and we detail – could we – would we detail it more at trial? Of course we would. But we detail how there was a long-term plan to market this product and the reason why it was particularly important to market Johnson's Baby Powder as safe and gentle and free from risk, certainly, of contracting ovarian cancer, which is a very deadly form of cancer, was because it was a cornerstone of the entire Johnson & Johnson company. It was that baby in the powder that Johnson & Johnson branded itself as a good, safe company overall and was really directed through the Baby Powder product. But the Baby Powder product was absolutely advertised for decades. Let me turn to a portion of this case that has not been touched on yet, and I'd like to at least touch on it before you sit down, and that is the claim for injunctive relief. I'm trying to figure out how it is that Ms. Estrada could possibly be deceived into purchasing Baby Powder again in the future. She's the class representative here. The first case to address this at the appellate level was Davidson v. Kimberly-Clark. It was addressed in October of this past year. It's a Ninth Circuit opinion. The Davidson v. Kimberly-Clark case said, look, if you want that product but you want it without the falsely advertised attributes in the future, then you would need to rely on the advertisements in the future, and under those circumstances you would have standing to seek injunctive relief. So how does that help you? So this helps me because I think it fits fine with McNair v. Synapt. Ms. Estrada purchased this product and used it for 60 years. She has liked it, she has used it all her life, and she stopped using it because of the increased risk of ovarian cancer. She would want to purchase it again. Now, can we plead it properly to meet the Davidson v. Kimberly-Clark case, which came down significantly after we had submitted our First Amendment complaint, well over a year after our complaint was filed? That case is consistent with McNair v. Synapt's group, which is the leading Third Circuit case. In McNair v. Synapt, the court specifically noted that this was a deceptive magazine renewal subscription case. The court specifically noted that the plaintiffs in McNair had successfully canceled their subscription and did not allege that they intended to renew that subscription in the future. So in that case, they would not have standing to bring an injunctive relief claim. If they said, we want to keep doing this, then arguably they would. So probably in that actual scenario in McNair, they probably would never have standing to bring an injunctive relief claim because it sounds like they didn't like the magazines. My question, of course, went to Ms. Estrada, and the case is about standing. So this question doesn't implicate standing, but assuming that there was a determination you have standing and you are forward, this is a class action. Might there not be some adequacy problems coming out of the fact that Ms. Estrada knows what she knows? For injunctive relief purposes? Yes. I think not that she really wanted to buy the body in the future, and I think that's the answer. Thank you very much. Thank you very much, and thank you for providing all that time. Thank you very much, counsel. Your helpful arguments will take this matter under advisement. I'd ask that we have a transcript of the oral argument prepared. Thank you very much. Thank you, Your Honor.